UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80701-CIV-DIMITROULEAS

AJ O'LAUGHLIN and CRYSTAL
LITTLE,

    Plaintiffs,
v.

PALM BEACH COUNTY, a political
Subdivision of the State of Florida,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant's Motion to Dismiss the Complaint [DE 35] ("Motion"). The Court has carefully considered the Motion, Plaintiffs' Response, and the Reply and is otherwise fully advised in the premises.

**I.    BACKGROUND**

On January 3, 2020, the Court granted Defendant Palm Beach County's ("Defendant" or "the County") Motion to Dismiss. [DE 31]. Plaintiffs AJ O'Laughlin ("O'Lauglin") and Crystal Little (" Little") (collectively "Plaintiffs") then filed an Amended Complaint on January 23, 2020. Am. Compl. [DE 32]. In their Amended Complaint Plaintiffs seek injunctive relief under 42 U.S.C §1983, the First Amendment to the United States Constitution, and the Florida Constitution. Am. Compl. ¶ 1. Plaintiffs' Amended Complaint states a single general count which attempts to present both a facial and an as-applied challenge to the Social Media Policy at issue and unconstitutional as applied to Plaintiffs as a restriction on their speech or as a restriction of their freedom of association. Am. Compl. ¶ 23. In addition, the Amended Complaint characterizes the Social Media Policy is a prior restraint on speech. Am. Compl. ¶ 24.

On February 6, 2019, Plaintiff O'Laughlin made Facebook posts in an invite-only Facebook page he maintained while campaigning for the presidency of Local 2928 of the International Association of Fire Fighters. Am. Compl. ¶ 4, 8, 10. The posts concerned alleged, attempted misuse of a Union Time Pool in November and December of 2018 by the union's First Executive Vice President, Captain Jeffrey L. Newsome ("Newsome"). Am. Compl. ¶ 10, 13, 15. UTP is a pool of paid-time-off hours donated by union members for union officers to use to take time off to perform union duties. Am. Compl. ¶ 9.

Plaintiff O'Laughlin's Facebook posts alleged that Newsome was coordinating with the Palm Beach County Fire and Rescue Department ("Fire Department") management to ensure he had Thanksgiving and Christmas Day off with pay by using Union Pool Time ("UTP") on those holidays. Am. Compl. ¶ 13, 14. The UTP allows officers to get paid their regular salaries for doing union business on days that they would otherwise be scheduled to work. Compl. ¶ 9. Plaintiff Little, a supporter of Plaintiff O'Laughlin's candidacy, commented on O'Laughlin's post in support of its content. Compl. ¶ 14.

Plaintiffs were disciplined per the department's Social Media Policy for the content of these posts and comment. Am. Compl. ¶ 22.

Defendant's Social Media Policy, attached to the Amended Complaint as Exhibits 1 and 2,[1] prohibits or discourages it employees from displaying or disseminating a number of types of content, including "content that could reasonably be interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or the perception of the public." Am. Compl. Ex. 1 § 2(d); Am. Compl. ¶ 6. The policy also prohibits the posting of any

---

[1] The Court notes that Plaintiff attaches two versions of the Social Media Policy, one from April 17, 2016 and one from February 28, 2019. *See* [DE 32-1, 32-2]. The Court here relies on the most recent version of the Policy which Plaintiff quotes from in its Amended Complaint.

information individuals have access to as a result of their employment. Am. Compl. Ex. 1 § 2(j). Am. Compl. ¶ 7. The social media policy also dictates that when making social media posts, employees "shall conduct themselves with professionalism and in such a manner that shall not reflect negatively upon [the] agency or its mission." Am. Compl. Ex. 1 § 2(g).

Plaintiffs seek a judgment from the Court declaring that Defendant Palm Beach County is precluded from disciplining Captain AJ O'Laughlin and Captain Little and declaring that the Social Media Policy is an unconstitutional prior restraint and unconstitutionally vague and overbroad. Am. Compl. 11.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S.

Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

### III.    ANALYSIS

#### A.  Freedom of Speech Claim

Defendant moves to Dismiss Plaintiffs' freedom of speech claim on the grounds that Plaintiffs did not speak as citizens on a matter of public concern and the disclosure of the misuse of UTP were part of Plaintiffs' official duties. In response, Plaintiffs reallege that Captain O'Laughlin and Captain Little speech involved a matter of public concern, even though the Court addressed this in its first Order on Defendants' Motion to Dismiss. As such, Plaintiffs argue that its First Amendment claim should be permitted to go forward. Specifically, Plaintiff argues that speech that relates to union activity is per se a matter of public concern. See 414 F.3d 1313 (11th Cir.); 592 F.2d 770. For the reasons set forth below, the Court agrees that Plaintiffs freedom of speech claim as applied to Plaintiffs O'Laughlin and Little is due to be dismissed as they have not sufficiently alleged that the speech at issue related to a matter of public concern.

For a public employee to bring a speech claim under the First Amendment against an employer the employee must have spoken as a citizen on a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015) (noting that the "first threshold requirement" of such a claim is whether a plaintiff was speaking as a citizen on a matter of public concern). Whether a statement is a matter of public concern is a determination made based on the content, form and context of the speech. *See Moss*, 782 F.3d at 621. In evaluating the content, form, and context, Court's look at 1) "whether the

'main thrust' of the speech in question is essentially public in nature or private," 2) "whether the speech was communicated to the public at large or privately to an individual" and 3) "what the speaker's motivation was." *See Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir. 2006) (citations omitted). Considering these factors, the Court again finds that Plaintiffs fail to allege facts sufficient to demonstrate that the speech at issue addressed a matter of public concern.

Here, the content of the speech addressed the potential misuse of a Union Time Pool, an internal, union-specific, paid-time-off sharing mechanism. The speech did not address misuse of public dollars or the Fire Department's budgeting priorities. *Cf Kurtz v. Vickrey*, 855 F.2d 723, 730 (11th Cir. 1988) (determining that memoranda that otherwise addressed personal personnel matters, related to issues of public concern when they discussed the spending priorities of a public university and the potential misuse of public dollars). Importantly, unlike the cases cited by Plaintiffs, Plaintiffs' speech did not regard union organizing, union membership, or retaliation against union members. *Cf Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (stating the issue of "union organization" is often considered a matter of public concern when evaluating the speech of a union president who was recruiting co-workers to join a union to improve working conditions for herself and her co-workers); *Porter v. Califano*, 592 F.2d 770, 779 (5th Cir. 1979) (noting that statements regarding alleged corruption and termination of a union leader who had also spoken out about corruption would be matters of public concern). Rather the statements, made during Plaintiff O'Laughlin's campaign, focused on differentiating O'Laughlin's promised behavior from the alleged indiscretion of Newsome. *See* Am. Compl. ¶ 13 ("When elected this will stop…Transparency is my campaign. So you will see the truth").

The context of Plaintiffs' speech also supports a finding that Plaintiffs' were not speaking on a matter of public concern. The allegations in the complaint suggest Plaintiffs were motivated to speak by personal interests in electing Plaintiff O'Laughlin to a union leadership position. Plaintiffs' statements were made months after the potentially inappropriate use of UTP was canceled, as in Newsome never successfully used UTP to take Thanksgiving and Christmas off. *See* Am. Compl. ¶¶ 11, 12. Such statements, made months after the alleged issues had been resolved suggest that the statements were made to serve personal interests. *See Deremo,* 939 F.2d 908, 912 (11th Cir. 1991) (finding that a time gap between the resolution of alleged sexual harassment and the statements at issue in the case helped establish a context that overcame the presumption that wrongful conduct of a public official is typically a matter of public concern). In addition, rather than being communicated to a public at large, Plaintiffs' statements were made in the form of posts and a comment in a private Facebook group built to support Plaintiff O'Laughlin's union election campaign.

Based on the foregoing the Court, again, finds that speech at issue in the complaint was not in regard to a matter of public concern.

   B.  *Freedom of Association Claim*

Plaintiffs allege in the alternative that Defendant's enforcement of the Social Media Policy against Plaintiffs O'Laughlin and Little, unconstitutionally infringed on their freedom of association under the First Amendment.

Defendant argues that Plaintiffs' freedom of association claim fails because the claim relates to speech that is not protected because it was not made as citizens on a matter of public concern. Defendant contends that this case is about an "internal power struggle" and Plaintiffs' speech, not protected associational conduct such as union membership or organizing. Further,

Defendant notes that Plaintiffs have not properly alleged causation between any associational activity and Defendant's disciplinary action.

The First Amendment's freedom of association protection covers two types of association: "association involving 'intimate human relationships' and association to engage 'in those activities protected by the First Amendment.'" *Cottrell v. Chickasaw City Sch. Bd. of Educ.*, 307 F. Supp. 3d 1264, 1281–82 (S.D. Ala. 2018), *appeal dismissed*, No. 18-10893-AA, 2019 WL 1209637 (11th Cir. Jan. 28, 2019) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). The right of intimate association concerns personal relationships, often those inherent to a family structure. *See McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (stating that "[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family"). The right of expressive association concerns associational conduct which related to other rights protected under the First Amendment such as "speech, assembly, petition for redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

The First Amendment's protection of the freedom of association extends to public employees' freedom to engage in associational conduct, including union membership. *See Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005). In the Eleventh Circuit, courts addressing freedom of association claims do not require that the associational conduct be related to a matter of public concern. *Cochran v. City of Atlanta*, 150 F. Supp. 3d 1305, 1319 (N.D. Ga. 2015) (citing *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005)); *Local 491, Int'l Bhd. of Police Officers v. Gwinnett Cty., GA*, 510 F. Supp. 2d 1271, 1288 (N.D. Ga. 2007).

However, Plaintiff has not sufficiently alleged associational conduct upon which the Defendant has infringed. Plaintiffs conclude Defendant infringed on their right to freedom of association by interfering with their participation in a union election. *See* Am. Compl. ¶ 23. Plaintiffs further allege that by disciplining Plaintiffs for their posts on Captain O'Laughlin's union campaign Facebook page Defendant "intruded on [Plaintiffs] freedom-of-association rights by weaponizing the Social Media Policy in favor of Capt. Newsome and other 2928 incumbents." The factual allegations in the Amended Complaint, however, do not support these conclusions. Plaintiffs allege they made Facebook posts in a private, union-election-campaign Facebook page; Captain Newsome filed a complaint stating that the posts violated the Social Media Policy; and finally, that Defendant disciplined them "for violating its Social Media Policy based on the contents of the [Facebook] posts." *See* Am. Compl. 3. From these scant allegations, the Court cannot draw a reasonable inference that Defendant is liable for intruding on Plaintiffs' right to freedom of association.

### C. Facial Challenge

#### i. Plaintiffs' Claim that the Policy is Unconstitutionally Overbroad and Vague

"It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992). In addition to challenging the validity of the Social Media Policy as enforced against Plaintiffs O'Laughlin and Little, Plaintiffs bring a facial challenge seeking to invalidate the Social Media Policy as unconstitutionally overbroad and vague. *See* Am. Compl. 11. Specifically, Plaintiffs take issue with the policy's prohibition of speech that

may "undermine the public trust and confidence required by employees of Fire Rescue" or that may "reflect negatively upon [the] agency or its mission". *See* Am. Compl. 11.

Defendant argues that the Social Media Policy is not unconstitutionally overbroad or vague when taken as a whole. In particular, Defendants note that § 2(d) of the policy includes an enumeration of exemplar forms of prohibited content which Defendant claims narrow the scope of the Social Media Policy. Finally, Defendant asks that the Court find that there is a close, rational relationship between the Social Media Policy and the County's interest in preserving the public's trust in its firefighters.

"A facial challenge to a public-employer's policy that creates a prospective restriction on speech is similar to a retaliation claim, but it assesses the policy's impact on all prohibited employee speech rather than merely the plaintiff's interest in the specific speech that resulted in his discipline." *Sabatini v. Las Vegas Metro. Police Dep't*, 369 F. Supp. 3d 1066, 1095 (D. Nev. 2019), *reconsideration denied*, No. 217CV01012JADNJK, 2019 WL 3307040 (D. Nev. July 23, 2019). The threshold question in cases addressing policies that set forth parameters for public employee speech remains whether the Department's policy regulates employees' rights to speak on matters of public concern. *See Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016) If the regulation covers speech that involves a matter of public concern, the government bears the burden of showing "that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *See Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016) (citing *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 466 (1995)).

Here, Plaintiffs have sufficiently alleged that the Social Media Policy regulates employees' rights to speak on matters of public concern. As Plaintiffs note, § 2(d) Social Media Policy prohibits employees "from disseminating content that is inconsistent with the duties, conduct, and responsibilities of a Fire Rescue employee including content that could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." *See* [DE 32-2] § 2(d). Section 2(g) states employees "shall conduct themselves with professionalism and in such a manner that shall not reflect negatively upon this agency and its mission." *See* [DE 32-2] § 2(g). Section 2(k) states employees "shall not post, transmit, or otherwise disseminate any information…to which they have access as a result of their employment without written permission from the Fire Rescue Administrator or designee." *See* [DE 32-2] § 2(k). These provisions taken together could be read to prohibit most speech critical of the government employer. Such a restraint would likely restrict an employee's right to speak on a matter of public concern. *See, e.g. Liverman v. City of Petersburg,* 844 F.3d 400, 407 (4th Cir. 2016). From these provisions the Court can reasonably infer that the Social Media Policy would restrict or chill potential speech that is a matter of public concern.

Section 2(d) does contain an explanatory phrase, stating "[f]or example, unprofessional, unbecoming, illegal, unethical, sexual, violent, harassing, racist, sexist, or ethnically derogatory comments, pictures, artwork, videos, material or other such references all tend to undermine the public trust and confidence required by employees of the Fire Rescue." However, even if read to limit the scope of § 2(d), this example of speech that tends to undermine the public trust may not limit the Social Media Policy's proscription of speech when considering the policy as a whole.

        ii.    *Plaintiffs' Claim that the Policy is a Prior Restraint*

Plaintiffs construe the Social Media Policy as a "prior restraint" on free speech and claim that they are challenging the policy and an unconstitutional prior restraint on free speech. The Social Media Policy at issue, however, is not a prior restraint on speech such that it would implicate precedent applicable to archetypical prior restraints like judicial orders and licensing schemas.

The phrase "prior restraint" is a term of art used "to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *See Alexander v. United States*, 509 U.S. 544, 550 (1993). While policies that prohibit government employees from engaging in certain types of speech and prescribe post hoc punishment for specified speech are prospective restrictions on speech, these policies are distinct from archetypical "prior restraints" on speech. *See, e.g. United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995) (analyzing a statute banning federal employees from accepting any honorarium as a ban that "chills potential speech before it happens" without ever describing it as a "prior restraint").

In *Moonin v. Tice,* the Ninth Circuit addressed the potential confusion between "prior restraints" and policies or regulations which serve as prospective restrictions on speech by prohibiting certain forms of speech. *See Moonin v. Tice*, 868 F.3d 853, 857 n. 1 (9th Cir. 2017). The Ninth Circuit noted that courts have often used the shorthand "prior restraint" to refer to prospective restrictions in order to differentiate such claims from retaliation claims brought after an employee has been punished for violating a speech-related policy, without intending to invoke precedent from cases addressing "archetypical prior restraints." The Moonin court acknowledged that the term "'prior restraint,'…conjures up a long line of cases in which we have held that such restraints are almost never permissible." *Id.* The Moonin court clarified that "claim[s]

concern[ing] a policy restricting employee speech, [are] analytically distinct from claims involving archetypical prior restraints, like government licensing requirements affecting only citizen speech or judicial orders forbidding certain speech by private parties." *Id.* (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993); *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Near v. Minnesota*, 283 U.S. 697, 713 (1931).

The Court is uncertain whether Plaintiffs intended to invoke precedent addressing "archetypical prior restraints." In its Response to Defendant's Motion to Dismiss, Plaintiff repeatedly invokes *United States v. National Treasury Employees Union*, which analyzed a statue that banned federal employees from accepting any honorarium. *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 469 (1995). *National Treasury Employees Union*, however, does not address a "prior restraint" as that term is used to identify restraints such as injunctions and licensing or pre-approval schemas. Notably, the United States Supreme Court never uses the phrase "prior restraint" in *National Treasury Employees Union*. *Id.* Instead the Supreme Court described the ban at issues as a statute that "chills potential speech before it happens." *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995). However, Plaintiff also cites to *Alexander v. United States* in a way that implies it regards the Social Media Policy as and archetypical "prior restraint."

As the Parties spent significant portions of their briefs discussing whether the Social Media Policy at issue is a "prior restraint," the Court takes this time to clarify that the Social Media Policy is not a "prior restraint" as that term is used to describe "archetypical prior restraints" such as administrative and judicial ***orders*** forbidding specific communications. *See Moonin v. Tice*, 868 F.3d at 857 n. 1 (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)) (emphasis added).

## IV. CONCLUSION

The Court, accepting all well-pleaded facts as true, determines that Plaintiffs fail to challenge the constitutionality of the Social Media Policy as it was applied to and enforced against Plaintiffs O'Laughlin and Little. Plaintiffs also fail to state a freedom of association claim. As such, Plaintiffs' as-applied challenge to the Social Media Policy is due to be dismissed. Defendant's Motion to Dismiss as to Plaintiffs' facial challenge is denied for the reasons stated above.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 35] is hereby **DENIED in part.**
2. Plaintiff's as-applied challenge to Defendant's Social Media Policy is **DISMISSED**.
3. Defendant shall file its Answer to Plaintiff's Amended Complaint within fourteen (14) days.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 6th day of July, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

All counsel of record