UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80701-CIV-DIMITROULEAS

AJ O'LAUGHLIN and CRYSTAL
LITTLE,

      Plaintiffs,

v.

PALM BEACH COUNTY, a political
Subdivision of the State of Florida,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment on Facial Unconstitutionality of Palm Beach County Fire Rescue Department's Social Media Policy [DE 47] ("Plaintiffs'") and Defendant's Motion for Summary Judgment [DE 49] (Defendant's). The Court has carefully considered the Motions, Statements of Material Facts [DE 48, 50], Responses [DE 51, 52, 53, 54], and Reply [DE 55, 56, 60] and is otherwise fully advised in the premises.

## I.    PROCEDURAL BACKGROUND

On January 3, 2020, the Court granted Defendant Palm Beach County's ("Defendant" or "the County") Motion to Dismiss. [DE 31]. Plaintiffs AJ O'Laughlin ("O'Lauglin") and Crystal Little ("Little") (collectively "Plaintiffs") then filed an Amended Complaint on January 23, 2020. Am. Compl. [DE 32]. In their Amended Complaint Plaintiffs seek injunctive relief under 42 U.S.C §1983, the First Amendment to the United States Constitution, and the Florida Constitution. Am. Compl. ¶ 1. Plaintiffs' Amended Complaint states a single general count which attempts to present both a facial challenge and an as-applied challenge to the Social Media

Policy at issue. Am. Compl. ¶ 23. Plaintiffs allege that the Social Media Policy as-applied to them served as an unconstitutional restriction on their freedom of speech and freedom of association. *Id.* In addition, the Amended Complaint characterizes the Social Media Policy as a prior restraint on speech. Am. Compl. ¶ 24.

On July 6, 2020, the Court granted in part Defendant's Motion to Dismiss the Amended Complaint. [DE 45]. In that Order the Court dismissed Plaintiffs' as-applied challenges to the Social Media Policy and ruled that the Social Media Policy was not a prior restraint on speech. [DE 45].

The only remaining issue in the present case is Plaintiffs' facial challenge to the Social Media Policy. Both Plaintiffs and Defendant have filed motions for summary judgement on this remaining issue.

## II.   FACTUAL BACKGROUND

On February 6, 2019, Plaintiff O'Laughlin made Facebook posts in an invite-only Facebook page he maintained while campaigning for the presidency of Local 2928 of the International Association of Fire Fighters. Am. Compl. ¶ 4, 8, 10. The posts concerned alleged, attempted misuse of a Union Time Pool in November and December of 2018 by the union's First Executive Vice President, Captain Jeffrey L. Newsome ("Newsome"). Am. Compl. ¶ 10, 13, 15. UTP is a pool of paid-time-off hours donated by union members for union officers to use to take time off to perform union duties. Am. Compl. ¶ 9.

Plaintiff O'Laughlin's Facebook posts alleged that Newsome was coordinating with the Palm Beach County Fire and Rescue Department ("Fire Department") management to ensure he had Thanksgiving and Christmas Day off with pay by using Union Pool Time ("UTP") on those holidays. Am. Compl. ¶ 13, 14. The UTP allows officers to get paid their regular salaries for

doing union business on days that they would otherwise be scheduled to work. Compl. ¶ 9. Plaintiff Little, a supporter of Plaintiff O'Laughlin's candidacy, commented on O'Laughlin's post in support of its content. Compl. ¶ 14.

Plaintiffs were disciplined per the department's Social Media Policy for the content of these posts and comment. Am. Compl. ¶ 22.

Plaintiffs seek a judgment from the Court declaring that the Social Media Policy is an unconstitutional prior restraint and unconstitutionally vague and overbroad. Am. Compl. 11. Plaintiffs take issue with a number of provisions of the Defendant's Social Media Policy, attached to the Amended Complaint as Exhibit 2, which provide guidelines for Fire Department employee's personal use of social media. For instance, Plaintiffs points to §2(d) of the Social Media Policy which prohibits employees from disseminating "content that could reasonably be interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or the perception of the public." Am. Compl. Ex. 2 § 2(d); Am. Compl. ¶ 6. The policy also prohibits the posting of any information individuals have access to as a result of their employment. Am. Compl. Ex. 2 § 2(k). Am. Compl. ¶ 7. The social media policy also dictates that when making social media posts, employees "shall conduct themselves with professionalism and in such a manner that shall not reflect negatively upon [the] agency or its mission." Am. Compl. Ex. 2 § 2(g).

The most recent version of the Social Media Policy was updated on February 28, 2019 and became effective on March 14, 2019. DSMF [DE 50] ¶ 15;[1] Am. Compl. Ex. 2 [DE 32-2].

The Social Media Policy states, in pertinent part:

---

[1] The Parties include various citations to portions of the record. Defendants' statement of facts [DE 50] is cited as "DSMF", Plaintiff's Response to Defendants Statement of Material Facts [DE 53] is cited as "PRSMF". Any citations herein to the statement of facts, response, and reply thereto should be construed as incorporating those citations to the record.

PURPOSE: The purpose of this policy is to provide guidelines on the procedure and use of social media and social networking.

…

2. Personal Use:

a. Fire Rescue recognizes the employee's right to participate in social networking/social media sites or maintain personal web pages, blogs or other types of online platforms while off-duty. However, it is strongly recommended employees use caution in their usage of social networking/ social media sites especially when displaying personal profiles so as not to discredit themselves or the agency.

b....

c....

d. While on-duty or off-duty employees are prohibited from disseminating content that is inconsistent with the duties, conduct, and responsibilities of a Fire Rescue employee, including content that could be reasonably interpreted as having an adverse effect on Fire Rescue morale, discipline, operations, the safety of the staff, or the perception of the public.

> i. For example, unprofessional, unbecoming, illegal, unethical, sexual, violent, harassing, racist, sexist, or ethnically derogatory comments, pictures, artwork, videos, material or other such references all tend to undermine the public trust and confidence required by employees of Fire Rescue.

e.. . .

f.. . .

g. Employees who choose to maintain or participate in social networking/social media sites while on-duty or off-duty shall conduct themselves with professionalism and in such a manner that shall not reflect negatively upon this agency or its mission.

h.. . .

i.. . .

j. Failure to comply with this policy may result in discipline up to and including termination. Authorized exceptions to this policy may be permitted by the Fire Rescue Administrator or designee for the operational needs of Fire Rescue. Employees are strongly encouraged to use caution and seek guidance of their supervisors regarding any posting that may adversely reflect upon Fire Rescue or the professionalism and integrity of the employee.

k. Employees shall not post, transmit, or otherwise disseminate any information (data, text, photographs, audio, video, or any other multimedia file) to which they have access to as a result of their employment without written permission from the Fire Rescue Administrator or designee.

*See* DSMF ¶ 16; Am. Compl. Ex. 2.

## III.  <u>STANDARD OF LAW</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).  Therefore, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (internal quotations omitted).

In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the nonmoving party.  *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court also must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

IV.   **DISCUSSION**

Plaintiffs argue that the Social Media Policy is unconstitutional due to both its overbreadth and its vagueness. The Court will address each challenge in turn.

A.   **Plaintiffs' Contention that the Social Media Policy is an Overbroad Restriction**

"A facial challenge to a public-employer's policy that creates a prospective restriction on speech is similar to a retaliation claim, but it assesses the policy's impact on all prohibited employee speech rather than merely the plaintiff's interest in the specific speech that resulted in his discipline." *Sabatini v. Las Vegas Metro. Police Dep't*, 369 F. Supp. 3d 1066, 1095 (D. Nev. 2019), *reconsideration denied*, No. 217CV01012JADNJK, 2019 WL 3307040 (D. Nev. July 23, 2019). In addressing a facial challenge to such a policy Courts routinely apply a modified version of the *Pickering* framework used in cases where a public employee has been disciplined for speech post-hoc. *Id.*; *See Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016). The first question addressed in this modified-*Pickering* analysis is whether the public-employer's policy regulates employees' rights to speak on matters of public concern. *See Liverman*, 844 F.3d at 407. If the regulation covers speech that involves a matter of public concern, the government bears the burden of showing "that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *See Liverman*, 844 F.3d at 407 (citing *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 466 (1995)).

Here, the Court finds that the Social Media Policy does cover speech that could involve matters of public concern. Information that could affect the public's perception of the Fire Department or information that Fire Department come in contact within the course of their

employment could certainly include matters of public concern when considered a broad range of future expression.

When balancing the interest of potential audiences and present and future government employees with the interest of the government, the Court notes the important public interest in the efficient and effective functioning of government offices. *See Grutzmacher v. Howard Cty.,* 851 F.3d 332, 342 (4th Cir. 2017). Further, in the "quasi-military" context, such as a fire department, the Eleventh Circuit has "afforded public employers greater latitude to burden an employee's rights, particularly when the exercise of that right impacts discipline, morale, harmony, uniformity, and trust in the ranks."[2] *Starling v. Bd. Of Cty. Comm'rs*, 602 F.3d 1257, 1261 (11th Cir. 2010).

The Fire Department's purposes in implementing the current version of the Social Media Policy include: (1) establishing a policy concerning personal web pages or internet sites when referencing Fire Rescue to ensure employees use appropriate discretion so as to not impede Fire Rescue's ability to serve the community and maintain the community's trust and respect; (2) clearly identifying prohibited activities by Fire Rescue employees on social networking and other web sites; (3) providing guidelines for Fire Rescue employees in applying rules of conduct to their online content; (4) protecting Fire Rescue and its employees from harm as a result of inappropriate postings or inadvertent harmful postings; (5) and maintaining order and discipline within Fire Rescue to promote efficient operations, trust and camaraderie among our firefighters internally, and the safety of staff." DSMF ¶ 17; PRSMF ¶ 17.

Reading the relevant provisions of the Social Media Policy in context of the overall policy, the Court finds the Fire Department's interests outweigh potential employee and audience

---

[2] The Parties also agree that due to the nature of the mission and work carried out by the Fire Department, the Fire Department operates as a paramilitary organization and follows a chain of command. *See* DSMF ¶ 5; PRSMF ¶ 5.

interests in the speech the Social Media Policy proscribes. In prohibiting content that "could be reasonably interpreted as having an adverse effect on Fire Rescue morale, discipline, operations, the safety of the staff, or the perception of the public", Am. Compl. Ex. 2 § 2(d), the Social Media Policy provides an illustrative example which explains,

> "For example, unprofessional, unbecoming, illegal, unethical, sexual, violent, harassing, racist, sexist, or ethnically derogatory comments, pictures, artwork, videos, material or other such references all tend to undermine the public trust and confidence required by employees of Fire Rescue."

Sections 2(g) and 2(k) of the Social Media Policy further reiterate that the target of the policy's provisions is any speech which reflects negatively upon the Fire Department, but rather speech that unprofessional speech that undermines the public trust in employees of the Fire Department. Section 2(g) states that Fire Department employees "shall conduct themselves with professionalism and in such a manner that shall not reflect negatively upon this agency or its mission." Am. Compl. Ex. 2 § 2(g). Section 2(k) strongly encourages Fire Department employees to "use caution and seek guidance of their supervisors regarding any posting that may adversely reflect upon Fire Rescue or the professionalism and integrity of the employee."

The sweep of the Social Media Policy appears to be narrower than the policy struck down by the Fourth Circuit in *Liverman v. City of Petersburg* which prohibited the the dissemination of any information "that would tend to discredit or reflect unfavorably upon the [Department] or any other City of Petersburg Department or its employees" and further states that "[n]egative comments on the internal operations of the Bureau, or specific conduct of supervisors or peers that impacts the public's perception of the department is not protected by the First Amendment free speech clause." *Liverman v. City of Petersburg*, 844 F.3d 400, 404 (4th Cir. 2016). The Policy further "strongly discourage[d] employees from posting information regarding off-duty

activities." *Id.* While the policy in *Liverman* did specify that officers were permitted to comment on issues of public concern "so long as the comments do not disrupt the workforce, interfere with important working relationships or efficient work flow, or undermine public confidence in the officer," the Fourth Circuit found that the potentially permissible provision did not salvage "the unacceptable overbreadth of the social networking policy taken as a whole." *Id.* at 409.

Rather, the Social Media Policy at issue in the present case seems to be more analogous to the policy upheld in *Sabatini v. Las Vegas Metropolitan Police Department*. *See* 369 F. Supp. 3d 1066, 1097 (D. Nev. 2019), *reconsideration denied*, No. 217CV01012JADNJK, 2019 WL 3307040 (D. Nev. July 23, 2019). The policy in *Sabatini* similarly prohibited speech that would

> a. Impair working relationships of the department for which loyalty and confidentiality are important; b. *Impede the performance of duties*; c. Impair discipline and harmony among co-workers; or d. *Negatively impact or tend to negatively impact the department's ability to serve the public.*

> that *ridicules, maligns, disparages, or otherwise promotes discrimination against* race, ethnicity, religion, sex, national origin, sexual orientation, age, disability, political affiliation, gender identity and expression[,] or other explicit class of individuals;

> that suggests the person is engaged in behavior reasonably considered to be unlawful or reckless toward public safety;

*See Sabatini v. Las Vegas Metro. Police Dep't*, 369 F. Supp. 3d 1066, 1072–73 (D. Nev. 2019), *reconsideration denied,* No. 217CV01012JADNJK, 2019 WL 3307040 (D. Nev. July 23, 2019). The Policy in *Sabatini* also stated

> Department members will not post, transmit, or otherwise disseminate any information, documents, photos or videos, *to which members have access as a result of employment*, without written permission from the Sheriff, or designee;

*See id.* Ultimately the Court finds here as the Court in *Sabatini* did that the impact of the proscriptions in the Social Media Policy is outweighed by the Fire Department's interest in functioning and orderly department capable of effectively serving the public.

**B.** **Plaintiffs' Contention the Social Media Policy is Unconstitutionally Vague**

In the context of public employment, the unconstitutional vagueness doctrine is intended to ensure that public employees have fair notice that certain conduct puts persons at risk of discharge. *See San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992). Policies of public employers "are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *Id.* (citing *Arnett v. Kennedy*, 94 S. Ct. 1633, 1647 (1974)). Here, the Court finds that the policy is sufficiently clear that a reasonable person could foresee the conduct which would put him at risk of discharge or other discipline. As the Court noted about section 2(d) of the policy provides an explanatory list of the types of speech or conduct which would fall under the policy and would serve to undermine public trust and confidence in Fire Department Employees.

Further, a "plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim ...." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1233 (11th Cir. 2018) (quoting *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2719 (2010). In the present case Plaintiffs' speech, in posting a picture of an internal calendar, was proscribed by the Social Media Policies prohibition on disseminating "disseminate any information (data, text, photographs, audio, video, or any other multimedia file) to which they have access to as a result of their employment without written permission from the Fire Rescue Administrator or designee." *See* Am. Compl. Ex 2 § 2(k). Plaintiffs statements that a fellow captain was a "thief" and that a staffing officer was "fucking stellar" who "blindly approves" what is before him, *see* [DE 50-2] ¶¶ 24–26, could be "reasonably interpreted as having an adverse effect on Fire Rescue morale," and as "unprofessional… comments" that tend to undermine the public trust and confidence required by

employees." *See* Am. Compl. Ex 2 § 2(d). As such, it is not clear the plaintiff may even raise a successful facial vagueness claim.

V.    **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   Plaintiff's Motion [DE 47] is **DENIED**.

2.   Defendant's Motion [DE 49] is **GRANTED.**

3.   Judgment shall be entered separately pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 12th  day of November, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

All counsel of record