UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80701-CIV-DIMITROULEAS/MATTHEWMAN

AJ O'LAUGHLIN and CRYSTAL LITTLE,

      Plaintiffs,

v.

PALM BEACH COUNTY, a political
Subdivision of the State of Florida,

      Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ON APPEAL [DE 95]

**THIS CAUSE** is before the Court upon Plaintiffs AJ O'Laughlin and Crystal Little's

("Plaintiffs") Motion for Attorneys' Fees on Appeal ("Motion") [DE 95]. The Honorable William

P. Dimitrouleas, United States District Judge, referred the Motion to the undersigned United States

Magistrate Judge. *See* DE 96. Defendant, Palm Beach County, has filed a Response in Opposition

[DE 99], and Plaintiffs have filed a Reply [DE 102]. Further, Plaintiffs and Defendant have filed

supplemental briefing as required by the Court. [DEs 104, 106]. Thus, the matter is now ripe for

review. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the

District Judge **GRANT IN PART AND DENY IN PART** Plaintiffs' Motion [DE 95].

## BACKGROUND

This case arises out of a dispute between Plaintiffs, AJ O'Laughlin and Crystal Little, and

Defendant, Palm Beach County, involving Plaintiffs' rights under the "Free Speech and Free

Association clauses of the First Amendment." [DE 32 at 1–2]. Specifically, Plaintiffs are captains

in the Palm Beach County Fire Rescue Department ("PBCFR"), and members of the International

Association of Firefighters Local 2928, who seek to enjoin PBCFR from enforcing its social media policy. *Id.* Plaintiffs allege that they were retaliated against due to "the content of several February 6, 2019 Facebook posts that PBCFR deemed [violative of] the prior restraints contained in [PBCFR's] Social Media Policy," and that "the Social Media Policy was used to punish them for their participation in a union election in which Capt. O'Laughlin was running for president . . . and [in which] Capt. Little was supporting him, in violation of their right to freedom of association." *Id.* at 2. Plaintiffs also allege that PBCFR's social media policy violates their freedom of speech and is unconstitutionally vague and overbroad on its face. *Id.* at 2, 11.

Based on these allegations, Defendant filed a motion to dismiss [DE 35]. The Court subsequently entered an Order [DE 45], partially disposing of Plaintiffs' claims. To this end, the Court denied Defendant's motion to dismiss in part, finding that Plaintiffs had alleged a proper facial challenge to the social media policy's constitutionality.[1] However, the Court found that Plaintiffs "fail[ed] to challenge the constitutionality of the Social Media Policy as it was applied to and forced against Plaintiffs" and "fail[ed] to state a freedom of association claim." [DE 45 at 13]. Thus, the Court dismissed Plaintiffs' as-applied challenge to Defendant's social media policy. *Id.*

Several months later, Plaintiffs and Defendant ("the parties") filed competing motions for summary judgment. [DEs 47, 49]. In the Court's ensuing Order [DE 76] on the parties' competing motions, the Court granted Defendant's motion for summary judgment [DE 49] and denied Plaintiffs' motion for summary judgment [DE 47]. In other words, the Court rejected Plaintiffs' remaining argument that the social media policy was both unconstitutionally vague and overbroad

---

[1] In connection with this ruling, the Court clarified that the social media policy did not constitute a "prior restraint." [DE 45 at 12].

on its face. [DE 76]. Accordingly, that same day, the Court entered final judgment in favor of Defendant and closed the case. [DE 77].

Plaintiffs timely appealed. [DE 78]. On appeal, Plaintiffs argued that the Court erred in "rejecting their (1) as-applied free-speech claim, (2) as-applied free-association claim, (3) facial overbreadth claim, and (4) facial vagueness claim." *O'Laughlin v. Palm Beach County*, 30 F.4th 1045, 1050 (11th Cir. 2022). The United States Court of Appeals for the Eleventh Circuit agreed in part with Plaintiffs, "affirm[ing] the district court's judgment as to the free-association and vagueness claims but vacat[ing] and remand[ing] as to the free-speech and overbreadth claims." *Id.* at 1055. Consequently, because the appellate court agreed with Plaintiffs on two of their four arguments on appeal, Plaintiffs filed a Motion for Attorneys' Fees on Appeal, seeking prevailing party attorneys' fees pursuant to 42 U.S.C. § 1988. The Eleventh Circuit then *sua sponte* transferred Plaintiffs' Motion to this Court "for consideration of whether [Plaintiffs] are entitled to attorney's fees and the amount of attorney's fees for which [Plaintiffs] are entitled, if any." [DE 95 at 1].

After the Eleventh Circuit transferred Plaintiffs' Motion to this Court for disposition, Defendant filed a Response in Opposition [DE 99], and Plaintiffs filed a Reply [DE 102]. However, based on the parties' filings—which omitted certain essential documents and referenced a supplemental response that had not been filed—on August 31, 2022, the Court issued a Paperless Order [DE 103], directing as follows:

> [O]n or before September 9, 2022, the parties shall file: (1) the Notice of Employment as to both Mr. Amlong and Ms. Daley, as required by Rule 3-6.1(c); and (2) the Affidavits of Compliance With Rule 3-6.1 (or documents demonstrating compliance with Rule 3-6.1(e)) as to both Mr. Amlong and Ms. Daley. Should the parties be unable to produce the documents, the parties must each file a brief explanation as to why, on or before September 9, 2022. The parties shall also briefly address their respective positions as to the legal effect, if any, of these documents,

3

or the lack of any such documents, on Plaintiffs' pending Motion for Attorneys'
Fees on Appeal filed at DE 95.

[DE 103]. The parties timely filed the requisite supplemental responses thereafter.[2] *See* DEs 104,
106.

## MOTION, RESPONSE, REPLY, AND SUPPLEMENTAL BRIEFING

### I.    Plaintiffs' Motion [DE 95]

In Plaintiffs' Motion [DE 95], Plaintiffs seek appellate attorneys' fees pursuant to 11th Cir.
R. 39-3 and 42 U.S.C. § 1988.[3] [DE 95 at 4]. In doing so, Plaintiffs argue that "[c]ourts have
interpreted Section 1988 to presumptively provide for attorneys' fees for prevailing plaintiffs." *Id.*
at 5 (citing *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1582 (11th Cir. 1994)). Plaintiffs
contend that, because they "prevailed on two significant issues in the litigation through the portion
of the [Eleventh Circuit's] Opinion that reversed [the] district court's ruling on the free speech and
overbreadth challenges to the [social media] policy," they are entitled to appellate attorneys' fees
under 42 U.S.C. § 1988. [DE 95 at 5, 8].

Further, Plaintiffs specifically contend that they are entitled to $28,217.50 in appellate
attorneys' fees, utilizing a series of attachments. *Id.* at 6–7. Those attachments provide: (1) a
detailed outline of the experience of William R. Amlong, Esq.; (2) a brief recitation of the
experience of the other two attorneys involved in the appellate case—Karen Coolman Amlong,
Esq., and Jennifer Daley, Esq.; (3) multiple cases from the Southern District of Florida supporting
Plaintiffs' attorneys' requested hourly rates; and (4) several billing entries, listed both
chronologically and by timekeeper. *Id.* at 31–91. However, as is of particular importance in

---

[2] Plaintiffs initially timely filed their Supplemental Response [DE 105] on September 9, 2022. However, upon
agreement from the parties, that Supplemental Response [DE 105] was stricken and replaced by DE 106. *See* DEs
108, 109.
[3] Plaintiffs mistakenly cite to 11th Cir. R. 39-3, which concerns prevailing parties' attorneys' fees under the Equal
Access to Justice Act, instead of properly citing to 11th Cir. R. 39-2.

relation to Plaintiffs' claim for appellate attorneys' fees, Plaintiffs note that they are requesting a reduced hourly "law clerk[]/J.D." rate for certain hours billed by Mr. Amlong and Ms. Daley while the two attorneys were suspended from The Florida Bar. *Id.* at 6–7.

## II.      **Defendant's Response in Opposition [DE 99]**

In response, Defendant does not dispute Plaintiffs' entitlement to appellate attorneys' fees. Rather, Defendant requests: (1) that the $14,187.50 in attorneys' fees claimed by Mr. and Ms. Daley for their work on the appellate case while suspended from The Florida Bar be "disallow[ed]"; and (2) that Mr. Amlong's and Ms. Daley's hourly rates "after they were reinstated to the practice of law b[e] reduced due to their suspension." [DE 99 at 4–5]. Stated differently, Defendant requests that the Court award Plaintiffs a maximum attorneys' fee award of $14,030.00. *See id.* at 4.

In support of Defendant's request that certain claimed fees be disallowed, Defendant argues that Mr. Amlong and Ms. Daley did not comply "with Rule 3-6.1(c) of the Rules Regulating the Florida Bar, which requires that a suspended lawyer or entity employing a suspended lawyer file a Notice of Employment containing specific information, before a suspended lawyer begins employment." *Id.* at 2. In this regard, Defendant notes that it "made a public records request (PRR) to the Florida Bar for documents in the Florida Bar's File number 2015-51,074 (Amlong's Disciplinary File) relating to 3-6.1(c)." *Id.* Defendant states The Florida Bar then provided two documents in response, neither of which were the "required Rule 3-6.1(c) notice[s] of employment."[4] *Id.*

---

[4] Defendant also notes that, "[a]lthough the Amlong disciplinary case and the Daley disciplinary case were consolidated for purposes of the Florida Supreme Court's opinion, they may not have been consolidated by the Florida Bar for purposes of the Bar's records." [DE 99 at 2 n.1]. Thus, Defendant states it made "a more detailed PRR" to The Florida Bar, seeking documents pertaining to both Mr. Amlong *and* Ms. Daley. *Id.* In connection with this "more detailed PRR," Defendant stated it would supplement its Response in Opposition, if necessary, once additional documents were received. *Id.*

Consequently, while noting that "[r]esearch has not revealed a case presenting similar facts," Defendant asserts that "[i]t is reasonable to conclude . . . that a suspended attorney who fails to comply with the Rules Regulating the Florida Bar may be sanctioned by disallowing claimed fees for work performed at the time of non-compliance." *Id.* at 4. Moreover, with respect to Defendant's second request—that Mr. Amlong's and Ms. Daley's hourly rates be reduced following their reinstatement to The Florida Bar—Defendant contends that "it is reasonable to conclude that an attorney who has faced a 91-day suspension should be billed at a rate lower than attorneys that have not been suspended by the Florida Bar." *Id.*

### III.    Plaintiffs' Reply [DE 102]

In reply, Plaintiffs advance four separate arguments. [DE 102 at 1–4]. First, Plaintiffs assert that Defendant "failed to timely defend or respond to the fees motion on appeal" when it was before the Eleventh Circuit, seemingly inferring that Defendant waived any objections to Plaintiffs' requested appellate attorneys' fees amount. [DE 102 at 1–2]. Second, Plaintiffs point out that "Defendant's Response has stated no legal basis for denying the motion for appellate attorneys' fees," arguing that "entitlement is [therefore] not [at] issue." *Id.* at 2. Third, Plaintiffs note that "[t]he only ground for [Defendant's] opposition to the fees motion is an argument to exclude all of the amount claimed for the paralegal work done by Mr. Amlong and Ms. Daley during their period of suspension (for which the Florida Bar was notified)." *Id.* at 2–3. In connection therewith, Plaintiffs contend that such argument—concerning the lack of a Notice of Employment—is "confusing" since Defendant has attached two "Affidavits of Compliance with Rule 3-6.1," demonstrating both notice to The Florida Bar and that the "paralegal work claimed in the fees motion at paralegal rates is of the type described in the affidavits [of compliance]." *Id.* at 3. Further, Plaintiffs note that, by challenging Mr. Amlong and Ms. Daley's claimed attorneys'

fees while the two attorneys were suspended from The Florida Bar *solely* on account of their purported failure to file a Notice of Employment, Defendant has not disputed Plaintiffs' attorneys' respective hourly rates or the number of hours expended on the appellate case during said suspension. *Id.*

Finally, Plaintiffs argue that the sole case cited by Defendant—*The Florida Bar v. Jones*, 571 So. 2d 426 (Fla. 1990)—is "clearly distinguishable." [DE 102 at 4]. Plaintiffs assert that the case is factually distinct, as *Jones* involved an attorney that: (1) failed to inform clients of his suspension; (2) attempted to engage in legal argument in court while suspended; (3) signed legal documents in his capacity as an attorney; and (4) continued to have direct client contact and give legal advice while suspended, which Plaintiffs assert is clearly not applicable in the instant case. *Id.* Thus, in sum, Plaintiffs request entry of an order granting their Motion. *Id.*

**IV.**   **The Parties' Supplemental Responses [DEs 104, 106]**

As referenced earlier, in light of Plaintiffs' failure to attach certain documents (such as the Notice of Employment as to both Mr. Amlong and Ms. Daley, as required by Rule 3-6.1(c), or documents demonstrating compliance with Rule 3-6.1(e) as to both Mr. Amlong *and* Ms. Daley), and in light of the fact that Defendant did not file a supplemental response following its "more detailed" public records request,[5] the Court ordered supplemental filing and/or briefing.

A.   Defendant's Supplemental Response [DE 104]

In Defendant's Supplemental Response, Defendant states that, on September 1, 2022, The Florida Bar responded to its "more detailed" public records request, providing several hundred additional documents. [DE 104 at 3]. However, Defendant states that none of the documents constituted the requisite Rule 3-6.1(c) Notice of Employment for either Mr. Amlong or Ms. Daley.

---

[5] *See* note 4, *supra.*

*Id.* Thus, according to Defendant, "[n]ow that the County has received all documents from the Florida Bar in response to a very expansive [public records request], it is clear that William Amlong and Karen Amlong, the attorneys who are the owners/directors of the Amlong Firm, wholly failed to comply with the Rules Regulating the Florida Bar, Rule 3-6.1(c), which places the onus on the entity employing a suspended lawyer to file a Notice of Employment before the suspended lawyer's employment begins." *Id.* at 4.

Accordingly, based on this non-compliance, Defendant now argues that "the Amlong Firm should be disallowed any fees whatsoever in this matter, as an appropriate sanction for the Amlong Firm's failure to comply with the Rules Regulating the Florida Bar." *Id.* Alternatively, Defendant argues that, "should this Court determine that the appropriate sanction should not extend beyond the time period during which the Amlong Firm was out of compliance with the Rules Regulating the Florida Bar, a reduction of the fee amount requested in [the] Motion . . . of $16,047.00 should be made," for a total fee award of $12,170.50. *Id.*[6]

   B.   <u>Plaintiffs' Supplemental Response [DE 106]</u>

In Plaintiffs' Supplemental Response, Plaintiffs admit that they "did not file the Notice required by Rule 3-6.1(c) before Mr. Amlong and Ms. Daley performed some of the work for which [Plaintiffs] seek to recover fees at paralegal rates for performing paralegal duties, due to an administrative oversight by" Ms. Amlong. [DE 106 at 2] (emphasis omitted). However, Plaintiffs argue that "Mr. Amlong and Ms. Daley practiced only within the scope permitted for suspended attorneys and [assert that] the Florida Bar did not find that either had failed to strictly comply with the requirements of their suspension." *Id.* (emphasis omitted). Indeed, Plaintiffs note that "[t]he

---

[6] It is unclear how Defendant arrived at $16,047.00, as this number appears to be a typo. Mr. Amlong and Ms. Daley billed $14,087.50 while suspended from The Florida Bar. Ms. Amlong, in turn, billed $1,860.00 for supervising the two attorneys during their suspension. This resulted in a total attorneys' fees amount of $16,047.50, not $16,047.00.

failure to file the Notice was never an issue with the Florida Bar." *Id.* Moreover, Plaintiffs argue that Defendant "points to no prejudice the County suffered as a result of the failure of The Amlong Firm to have filed the Notice." *Id.*

As explanation for the failure to file the requisite Notices of Employment, Plaintiffs contend that Ms. Amlong was "not aware of the requirement to provide a Notice of Employment or to provide quarterly reports to the Florida Bar until [she] was informed of that duty sometime during the last week of May 2021 or the first couple of days of June 2021." *Id.* at 3. Plaintiffs assert that upon becoming aware of such requirement, Ms. Amlong (and Mr. Amlong and Ms. Daley) took steps to become compliant, as is evidenced by the email correspondence and affidavits attached to Plaintiffs' Supplemental Response. *Id.* at 4–5.

Ultimately, Plaintiffs argue the fact that "no action was taken by the Florida Bar"—as well as the fact that The Florida Bar ultimately approved the reinstatement of both Mr. Amlong and Ms. Daley—weighs in their favor. *See id.* at 5–7. Plaintiffs contend that Defendant "ought not be permitted to benefit from an oversight by the supervising attorney that the record reflects had no demonstrable impact whatsoever on the Bar proceedings and was of no concern to the attorneys of the Florida Bar who stipulated to Mr. Amlong's and Ms. Daley's readmission." *Id.* at 9.

## DISCUSSION

### I.  Appellate Attorneys' Fees Entitlement

While entitlement is not disputed in this case, the Undersigned nonetheless finds it prudent to first establish Plaintiffs' entitlement to appellate attorneys' fees. "In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This includes appellate attorneys' fees, which "are recoverable under Section 1988."

*Gilroy v. Baldwin*, No. 16-14521-CV, 2021 WL 6427476, at *2 (S.D. Fla. Dec. 15, 2021), *report and recommendation adopted*, No. 16-14521-CIV, 2022 WL 112221 (S.D. Fla. Jan. 12, 2022) (citing *Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005)).

Section 1983 is a fee-shifting statute. *ACLU of Fla., Inc. (Greater Tampa Chapter) v. Polk County, Fla.*, No. 05CV02266, 2006 WL 2147716, at *2 (M.D. Fla. July 28, 2006) ("Congress enumerated § 1983 as a fee-shifting statute under which a court, in its discretion, may allow the 'prevailing party' a reasonable attorney's fee."). "[I]t is well established that a party need not obtain relief on every claim or legal theory it propounds in order to be considered 'prevailing' under a fee-shifting statute." *Jean v. Nelson*, 863 F.2d 759, 766 (11th Cir. 1988). Instead, "[a] prevailing party is one who prevails on any significant issue and thereby achieves some of the benefits sought by bringing suit." *Garrido v. Sec'y, Fla. Agency for Health Care Admin.*, 658 F. App'x 973, 977 (11th Cir. 2016) (alteration and internal quotation marks omitted) (quoting *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012)).

Here, Plaintiffs filed suit against Defendant Palm Beach County "pursuant to 42 U.S.C. § 1983 to enforce their rights under the Free Speech and Free Association clauses of the First Amendment to the United States Constitution, as extended to the states by the Fourteenth Amendment." [DE 32 at 1–2]. Subsequently, on appeal, the Eleventh Circuit "affirm[ed] the district court's judgment as to [Plaintiffs'] free-association and vagueness claims but vacate[d] and remand[ed] as to [Plaintiffs'] free-speech and overbreadth claims." *O'Laughlin*, 30 F.4th at 1055. In fact, with respect to the overbreadth claim in particular, the Eleventh Circuit determined that the social media policy was "indisputably" and "unacceptabl[y]" overbroad. *Id.* at 1053–55. Accordingly, because Plaintiffs therefore prevailed on a significant issue and achieved some of the benefits of bringing suit, and because appellate attorneys' fees are recoverable under 42 U.S.C.

1988(b) in connection with a claim brought under 42 U.S.C. 1983, the Undersigned **RECOMMENDS** that the District Judge find Plaintiffs entitled to appellate attorneys' fees.

**II.**     **Reasonable Attorneys' Fees Amount**

A.     Law Regarding Calculation of Attorneys' Fees

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted).  However, the Court may also use its own experience in assessing the reasonableness of attorneys' fees. *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman*, 836 F.2d at 1299)). The fee applicant bears

the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

B.      The Instant Case

1.      Timeliness of Defendant's Response

Before addressing the propriety of the hourly rate and number of hours expended by Plaintiffs' attorneys, it is first necessary to address Plaintiffs' seeming contention that Defendant has waived its ability to challenge Plaintiffs' request for $28,217.50 in appellate attorneys' fees on account of Defendant's failure to timely file a response or objection to the Motion while the case was before the Eleventh Circuit.

Under the Eleventh Circuit's rules concerning applications (or motions) for appellate attorneys' fees, "[a]ny party from whom attorney's fees are sought may file an objection to the application [for attorneys' fees]. An objection must be filed with the clerk within 14 days after service of the application [for attorneys' fees]." 11th Cir. R. 39-2(c). Here, Plaintiffs timely filed their Motion with the Eleventh Circuit on May 6, 2022. [DE 102-1 at 6]. And, the Eleventh Circuit *sua sponte* transferred the case to this Court on June 13, 2022, with no timely response from Defendant on file. *Id.*

Subsequently, on June 24, 2022—after the Motion was transferred to this Court—Defendant filed a Motion for Extension of Time to Respond to [Plaintiffs'] Motion for Attorneys' Fees on Appeal ("Motion for Extension of Time") [DE 97]. In that Motion for Extension of Time, Defendant explicitly stated that "Plaintiffs, through their attorney, indicated that they *do not oppose the relief sought in the instant motion*." [DE 97 at 2] (emphasis added). Thus, based on the unopposed nature of the Motion for Extension of Time, the Undersigned entered an Order [DE 98], allowing Defendant until July 5, 2022 to file a response to Plaintiffs' fees motion. Relying upon that Order [DE 98], on July 5, 2022, Defendant filed a Response in Opposition [DE 99].

Accordingly, the Undersigned **RECOMMENDS** that the District Judge consider Defendant's Response in Opposition as timely filed. Any determination to the contrary would be improperly putting form over substance and would not serve the interests of justice—particularly since here, Plaintiffs did not oppose Defendant's Motion for Extension of Time. While Defendant did not file a timely response to Plaintiffs' Motion when the case was before the Eleventh Circuit, the unopposed nature of the Motion for Extension of Time likely caused Defendant not to address timeliness in its Response.

2.      Counsel's Hourly Rate

Plaintiffs are seeking a total appellate attorneys' fees award of $28,217.50, consisting of $16,737.50 in appellate attorneys' fees attributable to Mr. Amlong, $9,620.00 in appellate attorneys' fees attributable to Ms. Daley, and $1,860.00 in appellate attorneys' fees attributable to Ms. Amlong. [DE 95 at 7]. More specifically, Plaintiffs are seeking the following appellate attorneys' fees in connection with this case: (1) $7,800.00 for the 13 hours that Mr. Amlong billed while *not* suspended from The Florida Bar, at a rate of $600.00 per hour; (2) $8,937.50 for the 27.5 hours Mr. Amlong billed while suspended from The Florida Bar, at a rate of $325.00 per hour; (3) $4,370.00 for the 9.2 hours Ms. Daley billed while *not* suspended from The Florida Bar, at a rate of $475.00 per hour; (4) $5,250.00 for the 17.8 hours Ms. Daley billed while suspended from The Florida Bar, at a rate of $300.00 per hour; and (5) $1,860.00 for the 3.1 hours Ms. Amlong spent supervising both Mr. Amlong and Ms. Daley, at a rate of $600.00 per hour. [DE 95 at 6–7]. The Court will address the experience and qualifications of each these three attorneys and the reasonableness of their hourly rates, in turn.

i.   <u>Mr. Amlong</u>

Mr. Amlong is "a shareholder in the six-lawyer litigation firm of Amlong & Amlong, P.A., d/b/a The Amlong Firm." [DE 95 at 33]. According to Mr. Amlong's Unsworn Declaration, Mr. Amlong is an attorney with more than 37 years of experience, practicing primarily in the areas of "labor-and-employment and other business matters." *Id.* He is "AV-rated by Martindale-Hubbell and for the past several years ha[s] been a Superlawyer and a Best Lawyer in America." *Id.* at 34. Mr. Amlong states that, as of January 1, 2021, his current billing rate is $650.00 per hour, which he notes was discounted to $325.00 per hour during his suspension from The Florida Bar.[7] *Id.* at 35. As it pertains to this reduction, in *The Florida Bar v. Daley*, 2021 WL 408774 (Fla. Feb. 4, 2021), Mr. Amlong received a 91-day suspension from The Florida Bar, effective thirty days from the date of the Florida Supreme Court's opinion. *Id.* at *1.

With respect to Mr. Amlong's work on the appellate case, Mr. Amlong billed 0.4 hours prior to his March 2021 suspension (at a rate of $600.00 per hour), 27.5 hours during his 91-day suspension and his time awaiting reinstatement (at a rate of $325.00 per hour), and 12.6 hours after his suspension (at a rate of $600.00 per hour). *See* DE 95 at 80–82. As stated earlier, Defendant argues that the appellate attorneys' fees Mr. Amlong billed while he was serving his 91-day suspension from The Florida Bar should be "disallowed," and that Mr. Amlong's hourly rate should be reduced following his reinstatement.[8] Further, in Defendant's Supplemental Response, Defendant argues that *all* attorney's fees should be disallowed in this case, as a sanction for Plaintiffs' failure to comply with Rule 3-6.1(c) of the Rules Regulating The Florida Bar. With this

---

[7] Despite the $650.00 rate in effect after January 1, 2021, Mr. Amlong billed $600.00 per hour while not suspended from The Florida Bar in the appellate case.
[8] Defendant's arguments in this case pertain to both Mr. Amlong and Ms. Daley. However, for organizational purposes, the Court will address Defendant's argument as to Ms. Daley separately below.

backdrop in mind, the Court will address Mr. Amlong's rate before, during, and after his suspension from The Florida Bar.

a.   <u>Pre-Suspension Hourly Rate</u>

In Defendant's Response [DE 99], Defendant does not challenge Mr. Amlong's pre-suspension hourly rate. However, in Defendant's Supplemental Response [DE 104], Defendant takes issue with Plaintiffs' recovery of *any* appellate attorneys' fees. It stands to reason, then, that Defendant essentially argues Mr. Amlong's hourly rate should be zero. Defendant's argument is not well-taken, for the reasons stated in Section II.B.2.i.b. below. Indeed, the Court declines to punish Mr. Amlong for time spent working on the case *before* he was suspended.

With that being said, here, Mr. Amlong billed 0.4 hours on the appellate case prior to his suspension from The Florida Bar, at a rate of $600.00 per hour. Although there is no expert affidavit in support of Mr. Amlong's hourly rate, the Court first notes that the lack of an expert affidavit is not fatal. After all, "the court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted). Accordingly, drawing from the Court's own knowledge and experience, the Court finds that a reduction in Mr. Amlong's hourly rate from $600.00 to $575.00 is appropriate. *See Anderson v. City of Fort Pierce*, No. 14-14095-Civ, 2018 WL 11422984, at *2–3 (S.D. Fla. Mar. 12, 2018), *report and recommendation adopted*, No. 14-14095-CIV, 2018 WL 11422983 (S.D. Fla. Apr. 4, 2018) (reducing Mr. Amlong's requested hourly rate from $550.00 to $500.00); *Club Madonna, Inc. v. City of Miami Beach*, No. 13-23762-CIV, 2015 WL 5559894, at *8 (S.D. Fla. Sept. 22, 2015) (finding a $548.00 hourly rate reasonable for an attorney with approximately 35 years of legal experience in a case involving 42 U.S.C. §

16

1983); *Smith v. City of New Smyrna Beach*, No. 11-cv-1110, 2015 WL 13738777, at *2–3 (M.D. Fla. Apr. 24, 2015), *report and recommendation adopted*, No. 11-cv-1110, 2015 WL 13738776 (M.D. Fla. May 20, 2015) (finding Mr. Amlong's requested $500.00 hourly rate reasonable).

b.   <u>Hourly Rate While Suspended</u>

The Undersigned next turns to the heart of the parties' dispute over Plaintiffs' appellate attorneys' fees request—the proper hourly rate of an attorney suspended from The Florida Bar, who solely performs "paralegal" work while allegedly not in compliance with the Rules Regulating The Florida Bar.

Defendant argues that Mr. Amlong violated the terms of his suspension by failing to comply with "Rule 3-6.1(c) of the Rules Regulating the Florida Bar" and that Plaintiffs should not recover attorneys' fees in connection with any time spent Mr. Amlong spent working on the appellate case while suspended. [DE 99 at 2; DE 104 at 4]. Under Rule 3-6.1, "persons or entities providing legal services may employ suspended lawyers . . . to perform those services that may ethically be performed by nonlawyers." R. Regulating Fla. Bar 3-6.1(a). When employing a suspended lawyer, "[t]he lawyer or entity employing [the suspended lawyer] must provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the individual subject to this rule before employment starts." R. Regulating Fla. Bar 3-6.1(c). For purposes of Rule 3-6.1(c), "services that may ethically be performed by nonlawyers" while serving a suspension from The Florida Bar include "work at a law firm as a law clerk or investigator during the period of suspension."[9] *The Florida Bar v. Forrester*, 916 So. 2d 647, 652 (Fla. 2005). "The standards of professional conduct of members of the Bar of this Court . . . include the current Rules Regulating The Florida Bar." S.D. Fla. L.R. 11.1(c). "For a violation of any of

---

[9] This work is "similar in nature to [the services] performed by paraprofessionals or paralegals." *The Florida Bar v. Thomson*, 310 So. 2d 300, 302 (Fla. 1975).

17

[the Rules Regulating The Florida Bar] in connection with any matter pending before this Court, an attorney may be subjected to appropriate disciplinary action." *Id.*

Here, Mr. Amlong billed 27.5 hours in total for time spent working on the appellate case during his suspension. [DE 95 at 82]. If the Court were to find that Mr. Amlong intentionally violated the Rules Regulating The Florida Bar, the Court would be inclined to recommend disallowing fees stemming from these 27.5 hours. However, after reviewing the parties' filings, it does appear that the failure to file a Notice of Employment pursuant to Rule 3-6.1(c) is more akin to a violation of the letter rather than the spirit of the Rules Regulating The Florida Bar. Indeed, Plaintiffs have attached an Employee Affidavit [DE 106-3 at 3–4] and Affidavit of Compliance with Rule 3-6.1 [DE 106-5] pertaining to Mr. Amlong. Moreover, Plaintiffs have attached a Stipulation for Summary Proceedings with respect to Mr. Amlong, in which The Florida Bar "agree[d] and . . . stipulate[d] that had a full evidentiary hearing been held[, Mr. Amlong] would have been able to establish . . . [s]trict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order . . . ." [DE 106-8 at 3]. Thus, this is not a situation in which The Florida Bar was unaware of Mr. Amlong's employment. In fact, The Florida Bar readmitted Mr. Amlong without issue.

Accordingly, the Undersigned finds that it would be inequitable to disallow all appellate attorneys' fees in connection with the 27.5 hours Mr. Amlong spent working on the case as a paralegal during his suspension from The Florida Bar. The Court therefore rejects Defendant's attempt to pay *nothing* for those 27.5 hours, when Defendant is already benefitting from Mr. Amlong charging a reduced hourly rate during his suspension. However, the Court finds Mr. Amlong's requested $325.00 hourly "law clerk[]/J.D. rate" to be significantly higher than is appropriate in this district. Specifically, in Plaintiffs' Reply, Plaintiffs characterize Mr. Amlong's

work as "paralegal" work, which is "consistent with drafting and research work done by paralegals at the instruction of an attorney and for an attorney's review." [DE 102 at 3]. It follows, then, that an attorney suspended from The Florida Bar who is performing paralegal work—and who is *required* to perform work of a paralegal nature under the Rules Regulating The Florida Bar— should only be entitled to attorneys' fees at an appropriate paralegal rate.

In this regard, the Court finds that a reduction in Mr. Amlong's claimed hourly rate while suspended from The Florida Bar from $325.00 to $200.00 is fitting, as a $200.00 hourly rate would be appropriate for a paralegal in this district with significant experience. *See Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2018 WL 5768570, at *5 (S.D. Fla. Nov. 2, 2018), *report and recommendation adopted*, No. 15-81782-CIV, 2018 WL 6424899 (S.D. Fla. Nov. 21, 2018) (concluding that a $175.00 hourly rate was reasonable for a paralegal with over 30 years of experience); *Moussa v. Certain Underwriters at Lloyd's, London*, No. 20-CV-22313, 2022 WL 2195305, at *4 (S.D. Fla. Mar. 7, 2022), *report and recommendation adopted*, 20-CV-22313, 2022 WL 7513741 (S.D. Fla. Oct. 13, 2022) (recommending reducing the hourly rate for paralegals with fourteen and eleven years of experience, respectively, from $230.00 to $100.00). While paralegal rates vary greatly in this district, they are dependent upon the facts and circumstances of each case. Here, the Undersigned finds that a $200.00 hourly paralegal rate is appropriate for Mr. Amlong in this case, based upon this case's unique facts and circumstances.

c.     Post-Suspension Hourly Rate

Again, as stated earlier, Defendant argues that "it is reasonable to conclude that an attorney who has faced a 91-day suspension should be billed at a rate lower than attorneys that have not been suspended by the Florida Bar," DE 94 at 4, and that Plaintiffs should receive *zero* appellate attorneys' fees as a sanction for violating the Rules Regulating The Florida Bar. [DE 104 at 4].

As to the former argument, while there is no apparent case addressing this issue, the Court notes that the only *Bivins* factor relevant to the matter at hand when determining a proper hourly rate would be "the experience, reputation, and ability of the attorneys." *Bivins*, 548 F.3d at 1350 n.2. In this regard, the Court finds that Mr. Amlong's $600.00 hourly rate (reduced to $575.00 in this case) garnered over the course of his 37-year career should not be further reduced because of his recent suspension, as such suspension did not negate his ability or his extensive experience. Defendant's attempts to lower Mr. Amlong's hourly rate following his reinstatement to The Florida Bar—*after* already receiving the benefit of paying a reduced paralegal rate for Mr. Amlong in this case, are not well-taken. Moreover, as it pertains to Defendant's argument that Plaintiffs (and Mr. Amlong) should not receive *any* appellate attorneys' fees as a sanction, the Court again rejects such argument.

      ii.    <u>Ms. Daley</u>

According to Mr. Amlong's Unsworn Declaration, Ms. Daley is a "30-year lawyer who began her career as a law clerk to the late Hon. E. Earle Zehmer, the chief judge of the First District Court of Appeal, and has concentrated in labor-and-employment since joining The Amlong Firm in 1998." [DE 95 at 40]. However, in *Florida Bar v. Daley*, 2021 WL 408774 (Fla. Feb. 4, 2021), Ms. Daley received a 91-day suspension from The Florida Bar, effective as of the date of the opinion. *Id.* at *1.

With respect to Ms. Daley's work on the appellate case, Ms. Daley billed 2.7 hours prior to her February 2021 suspension (at a rate of $475.00 per hour), 17.8 hours during her 91-day suspension and ensuing time awaiting reinstatement (at a rate of $325.00 per hour), and 6.5 hours after her suspension (at a rate of $475.00 per hour). *See* DE 95 at 86–91. Defendant addresses Mr. Amlong and Ms. Daley simultaneously when requesting that fees be "disallowed" and when

requesting that the two attorneys' hourly rates be reduced following reinstatement. In other words, Defendant's argument is identical with respect to Ms. Daley. The Court thus adopts and incorporates the analysis pertaining to Mr. Amlong above, merely changing the hourly rate and reference to certain docket entries as they relate to Ms. Daley. With this in mind, the Court will address Ms. Daley's rate both before, during, and after her suspension from The Florida Bar.

    a.  Pre-Suspension Hourly Rate

In the instant case, Ms. Daley billed 2.7 hours on the appellate case prior to her suspension from The Florida Bar, at a rate of $475.00 per hour. While there is also no expert affidavit in support of Ms. Daley's hourly rate, the Court again notes that the lack of an expert affidavit is not fatal. After all, "the court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted). Thus, turning to and relying upon the Court's own knowledge and experience, the Court finds that reducing Ms. Daley's $475.00 hourly rate to $455.00 is reasonable. *See Anderson*, 2018 WL 11422984, at *2–3 (reducing Ms. Daley's requested hourly rate from $400.00 to $375.00); *Smith*, 2015 WL 13738777, at *2–3 (finding Ms. Daley's requested $400.00 hourly rate reasonable).

    b.  Hourly Rate While Suspended

As just stated, the Court adopts and incorporates the analysis pertaining to Mr. Amlong's hourly rate while suspended above. In doing so, the Court notes that Plaintiffs have also attached an Employee Affidavit [DE 106-3 at 5–6] and Affidavit of Compliance with Rule 3-6.1 [DEs 106-6, 106-7] pertaining to Ms. Daley. Moreover, the Court notes that Plaintiffs have attached a Stipulation for Summary Proceedings with respect to Ms. Daley, in which The Florida Bar

"agree[d] and . . . stipulate[d] that had a full evidentiary hearing been held[, Ms. Daley] would have been able to establish . . . [s]trict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order . . . ." [DE 106-9 at 7]. Consequently, the Court finds that it is improper to disallow appellate attorneys' fees for the time Ms. Daley spent working on the case in a paralegal capacity.

However, the Court also finds Ms. Daley's requested $300.00 hourly "law clerk[]/J.D. rate" to be significantly higher than is appropriate. Accordingly, the Court finds that a reduction in Ms. Daley's claimed hourly rate while suspended from The Florida Bar from $300.00 to $185.00 is appropriate, as Plaintiffs maintain that Ms. Daley should receive a lower paralegal rate than that of Mr. Amlong, DE 95 at 7, and a $185.00 hourly rate would be appropriate for a paralegal in this district with significant experience. *See Tillman*, 2018 WL 5768570, at *5 (concluding that a $175.00 hourly rate was reasonable for a paralegal with over 30 years of experience); *Moussa*, 2022 WL 2195305, at *4 (recommending reducing the hourly rate for paralegals with fourteen and eleven years of experience, respectively, from $230.00 to $100.00). The Undersigned finds this paralegal rate appropriate for Ms. Daley in this case, based upon this case's unique facts and circumstances.

c.   <u>Post-Suspension Hourly Rate</u>

The Court relies on its analysis above as to Mr. Amlong's post-suspension hourly rate and finds that Ms. Daley's $475.00 rate (reduced to $455.00 in this case) established over the course of her 30-year career should not be further reduced because of her recent suspension. It would simply be inequitable to allow Defendant to benefit both from Ms. Daley's paralegal rate in the appellate case, and from a reduction in her hourly rate following reinstatement to The Florida Bar.

### iii.   Ms. Amlong

Ms. Amlong is also a shareholder "in the six-lawyer litigation firm of Amlong & Amlong, P.A., d/b/a The Amlong Firm." [DE 95 at 33]. She was admitted to The Florida Bar in 1979, and has over forty years of legal experience. *Id.* at 40. Unlike Mr. Amlong and Ms. Daley, Ms. Amlong was not suspended by The Florida Bar, and her work on this case remained at a $600.00 hourly rate for the entire duration of the case. Ms. Amlong billed 3.1 hours in total on the appellate case. [DE 95 at 7].

Here, although there is also no expert affidavit in support of Ms. Amlong's hourly rate, the Court notes for the final time that the lack of an expert affidavit is not fatal. After all, "the court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted). Thus, drawing from the Court's own knowledge and experience, the Court finds that a reduction in Ms. Amlong's hourly rate from $600.00 to $575.00 is appropriate. *See Anderson*, 2018 WL 11422984, at *2–3 (reducing Ms. Amlong's requested hourly rate from $550.00 to $500.00); *Club Madonna, Inc.*, 2015 WL 5559894, at *8 (finding a $548.00 hourly rate reasonable for an attorney with approximately 35 years of legal experience in a case involving 42 U.S.C. § 1983); *Smith*, 2015 WL 13738777, at *2–3 (finding Ms. Amlong's requested $500.00 hourly rate reasonable). In making this finding, the Court once more rejects Defendant's attempt to disallow *all* appellate attorneys' fees in this case.

### 3.   Number of Hours Reasonably Expended

Before considering the reasonableness of Plaintiffs' counsels' billed hours, the Court first notes that Defendant has waived any argument as to the reasonableness of the billing entries

because Defendant's response does not challenge the reasonableness of the billing entries or even reference them *at all*.[10] *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 WL 2269822, at *9 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, No. 18-cv-60912, 2021 WL 2024424 (S.D. Fla. May 21, 2021) (finding that failure to object to the reasonableness of the amount requested resulted in waiver of objection as to the reasonableness of the claimed fees). Nonetheless, despite this limited waiver, the Court has taken the total billing records into consideration for purposes of determining a proper fee award.

In reviewing Plaintiffs' counsels' billing records, the Court has identified several issues. First, Plaintiffs contend Mr. Amlong spent 12.6 hours working on the reply brief which was only 11 pages long. [DE 95 at 82]. For this same reply brief, Ms. Daley billed 3.4 hours to "assist with portions of the draft." *Id.* at 90–91. Additionally, Ms. Daley billed 4.5 hours for preparing an appendix to the initial brief. *Id.* The Court finds this amount of time excessive and that it should be reduced pursuant to *Bivins*. *See Bivins*, 548 F.3d at 1350 (providing for a reduction in the number of hours or an across-the-board cut in calculating a fee award if a court finds the hours billed to be excessive or unnecessary).

Second, the billing records submitted by Plaintiffs' counsel evidence several instances of block billing. "Block billing is impermissible because it prevents the Court from determining which portion of the fees billed on a particular date is recoverable and which is not." *Winslow v. Indiheartandmind, Inc.*, No. 21-cv-80800, 2022 WL 426513, at *3 (S.D. Fla. Feb. 11, 2022). Here, for example, Ms. Daley billed 3.4 hours for "assist[ing] with research" and "receiv[ing] and respond[ing] to e-mails." [DE 95 at 90–91]. Ms. Daley further billed 3.4 hours for "continu[ing]

---

[10] The Court considers Defendant's failure to challenge the billing entries within its written response as different than Defendant's failure to file a response to Plaintiffs' Motion in the first instance, as here, there was no related motion or circumstances which would allow the Court to look beyond Defendant's waiver.

to work on the appendix" and "review[ing] some of the pleadings while doing[] so." *Id.* at 90. This use of block billing also warrants a reduction in Plaintiffs' requested appellate attorneys' fees. *See Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 204 (11th Cir. 2012) (permitting a district judge to apply an across-the-board cut in attorneys' fees due to block billing).

Third, it does appear that a small portion of the time requested is unnecessary or unrelated, and that Plaintiffs' attorneys have therefore not exercised proper billing judgment to a limited extent. *See Barnes*, 168 F.3d at 428. Specifically, Ms. Amlong billed 0.1 hours for an "[e]ntry unrelated to the appeal." [DE 95 at 84]. This time is clearly unrelated to the appeal by Ms. Amlong's own admission and is not recoverable.

### 4.   Calculation of Lodestar Amount

The Court has carefully considered the deficiencies in Plaintiffs' counsels' billing records that: (1) bill excessively for certain tasks; (2) contain block billing entries; and (3) contain entries unrelated to the appeal. Accordingly, the Court finds it appropriate to reduce the time billed.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783). Here, the Undersigned finds that an across-the-board reduction in hours—taking into consideration the reduced hourly paralegal rate applicable during nearly all of the deficient billing deficiencies—is appropriate; specifically, that a 10% reduction is proper. Thus, Plaintiffs' $22,236.50 appellate attorneys' fees award, consisting of $12,975.00 in appellate attorneys' fees attributable to Mr. Amlong (27.5 hours at a rate of $200.00 and 13 hours at a rate of $575.00), $7,479.00 in appellate attorneys' fees attributable to Ms. Daley (17.8 hours at a rate of $185.00 and 9.2 hours at a rate of

$455.00), and \$1,782.50 in appellate attorneys' fees attributable to Ms. Amlong (3.1 hours at a rate of \$575.00), is hereby reduced by 10%, to \$20,012.85. The Court notes that this amount strikes a reasonable balance between Plaintiffs' request for \$28,217.50, and Defendant's updated request that the Court award Defendant a *maximum* appellate attorneys' fee amount of \$12,170.50.

Stated differently, the Undersigned **FINDS** that a 10% reduction from the hours sought by Plaintiffs is appropriate and **FINDS** a total appellate attorneys' fee award of \$20,012.85 to be appropriate under all the facts of this case. Therefore, the Undersigned also **RECOMMENDS** that Plaintiffs be awarded a total of \$20,012.85 in appellate attorneys' fees.

## CONCLUSION

In light of the foregoing, the Undersigned **RECOMMENDS** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Plaintiffs' Motion [DE 95]. Specifically, the Undersigned **RECOMMENDS** that the District Judge find Plaintiffs entitled to prevailing party attorneys' fees under 42 U.S.C. § 1988, award Plaintiffs appellate attorneys' fees in the amount of \$20,012.85, and enter a judgment against Defendant for such amount, applying the appropriate statutory interest.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v.*

*Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir.

R. 3-1.

      **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach County, Florida,

this 26th day of October, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge

27